IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES RICHARD REAM, | ) | CASE NO. 3:15-cv-00313 |
| | ) | |
| Petitioner, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| JASON BUNTING, | ) | |
| Warden,[1] | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |
| | ) | |

Petitioner James Richard Ream ("Petitioner" or "Ream"), acting *pro se*, filed this habeas

corpus action pursuant to 28 U.S.C. § 2254 ("Petition").  Doc. 1.  Ream challenges the

constitutionality of his convictions and sentences in *State v. Ream*, Case No. CR2011-0411

(Allen County).  Doc. 1.  In 2012, Ream was convicted of murder with a firearm specification.

Doc. 1, p. 1; Doc. 11-1, p. 199.  The victim was Ream's brother, Ron.  Doc. 11-1, p. 293.  The

trial court sentenced Ream to fifteen years' to life imprisonment for murder, and three years'

imprisonment for the firearm specification, to be served consecutively, for a total of eighteen

years' to life imprisonment.  Doc. 11-1, pp. 200-01.

This matter has been referred to the undersigned Magistrate Judge pursuant to Local Rule

72.2.  On August 28, 2015, Respondent filed an Answer/Return of Writ.  Doc. 11.  On October

---

[1] In Respondent's Return of Writ, filed August 28, 2015, Respondent states that Ream is incarcerated at the Marion Correctional Institution, where he is in the custody of Warden Jason Bunting.  Doc. 11, p. 1.

29, 2015, Petitioner filed a Traverse.  Doc. 18.  On August 12, 2016, Petitioner filed, with leave, a supplement to his Traverse.  Doc. 20.

Also pending before this Court are Ream's "Motion to [I]nclude Default by the State of Ohio to [Record] [I]nvolving: [Ream v. Ohio] (2011-2016)" (Doc. 24) and request to issue interrogatories upon Respondent (Doc. 25).

Ream's request for interrogatories (Doc. 25) is **DENIED** since Ream has not established good cause for discovery pursuant to Rule 6(a) of the Rules Governing Section 2254 Cases.  *See also Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997) ("Good cause" for discovery under Rule 6(a) exists "'only where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief . . . .'") (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)).

Ream's "Motion to [I]nclude Default," in which he appears to argue that he is entitled to a default judgment because Respondent did not respond to his Traverse, is meritless.  Under the laws governing federal petitions for writ of habeas corpus, if ordered, a respondent must file an answer to the petition, or "return of writ."   *See* Rules Governing Section 2254, Rule 5, 28 U.S.C.A. foll. § 2254.  Per this Court's order, the Respondent filed his return of writ on August 28, 2015.  Doc. 7; Doc. 11.  Ream then had the opportunity to and did file his Traverse as well as a Supplement.  *See* Rules Governing Section 2254, Rule 5, 28 U.S.C.A. foll. § 2254; Doc. 7; Doc. 18; Doc. 20.  Respondent could have, but was not required to, file a response to Ream's Traverse.  *See* Doc. 7.  Respondent's decision not to respond to Ream's Traverse, therefore, does not result in a default judgment.  Accordingly, the undersigned recommends that the Court **DENY** Ream's "Motion to [I]nclude Default" (Doc. 24).

Furthermore, for the reasons set forth below, the undersigned recommends that the Court **DISMISS** Ream's Petition (Doc. 1) in its entirety because the Petition presents claims that are not cognizable on federal habeas review and/or are procedurally defaulted.

## I.     Factual Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual determinations are presumed correct.  28 U.S.C. § 2254(e)(1).  The petitioner has the burden of rebutting that presumption by clear and convincing evidence.  *Id.*; *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008) *cert. denied,* 129 S. Ct. 2878 (2009). The Third District Ohio Court of Appeals summarized the facts underlying Ream's conviction as follows:

{¶ 31} The trial of this matter commenced on August 12, 2012 and ended on August 15, 2012. The State's first witness was Rex Whetstone, Ron's former neighbor and good friend. On direct examination, Whetstone testified that Ron was recently retired and that before his retirement he had suffered from health problems. Specifically, Ron had been diagnosed with prostate cancer and had to have a surgery to remove his cancer. Despite having this surgery, Ron would still golf with Whetstone one to two times a week.

{¶ 32} Whetstone testified as to Ream's and Ron's relationship over the past six years. According to Whetstone, Ream lived with Ron, and Ream would occasionally mow the yard and do landscaping. But, Ream did not contribute to the household expenses and rarely was able to keep a job while living with Ron. Whetstone further testified that Ron owned two cars and let Ream drive one of them. Whetstone was also able to comment on Ream's spending habits and revealed that Ream spent much of his money on lottery tickets. Whetstone stated that in his six years of knowing the two brothers, he never saw them get in a physical confrontation.

{¶ 33} Whetstone then testified in regard to events he witnessed on October 17, 2011. Whetstone stated he was having relationship troubles with his significant other and decided to go to Ron's for the night. Around 10:00 p.m., Whetstone arrived at 1240 Fairgreen and noticed that all the lights were off, and the only light

3

coming from the house was from the TV. Whetstone also observed that only Ron's car was in the driveway, and that the car Ream usually drove was not there.

{¶ 34} As Whetstone approached the door he saw Ron lying on the floor with a blanket on top of him. Whetstone testified that he knocked on the door, but Ron did not wake up. Whetstone did not think this was unusual as Ron was hard of hearing. Whetstone then proceeded to call both Ron's and Ream's cell phones, but got no answer. Then Whetstone walked to the back of 1240 Fairgreen, hoping the back door would be unlocked. However, the back door was also locked, and Whetstone tried knocking again. Around 10:30 that night, Whetstone decided to leave.

{¶ 35} On cross-examination, Whetstone testified that after Ron's prostate surgery, Ron experienced discomfort and some pain. Ron also could not complete many of the chores around the house. Ream helped Ron with these chores for the time he was recovering from his surgery. Whetstone also testified that Ream always did the landscaping and yard work for Ron. Further, Whetstone admitted that Ron liked to drink beer and smoke marijuana on a daily basis.

{¶ 36} The State then called Megan Mays, an employee of a local gas station, to testify. Megan testified that Ream often came to the gas station to buy lottery tickets. According to Megan, she learned that Ream was accused of killing Ron the day after the shooting occurred. Megan thought this was strange, as Ream had come into the gas station the previous evening. Megan testified she left work about 10:10 p.m. on October 17, 2011 and saw Ream come into the station as she was leaving.

{¶ 37} Deputy Jerry Cress of the Allen County Sheriff's Office was the next witness to testify. Deputy Cress testified that he was on duty on October 18, 2011. Around noon, Deputy Cress was in the parking lot of the Sheriff's Office, placing some items in his police cruiser when Ream approached him. According to Deputy Cress, Ream asked him if he was on duty and if he had jurisdiction in Shawnee Township. When Deputy Cress replied that he did have jurisdiction, Ream told Deputy Cress to arrest him. Deputy Cress then asked Ream why he needed to be arrested, and Ream told Deputy Cress that "he had got[ten] into a situation that he couldn't get out of and he shot his brother." Trial Tr., p. 367.

{¶ 38} According to Deputy Cress, Ream's demeanor was calm but upset. Deputy Cress took Ream down to the booking area where he met with his supervisor and spoke with the Shawnee Township Police Department. Ream gave Deputy Cress his keys and gave him verbal permission to enter 1240 Fairgreen. When Deputy

4

Cress arrived at the crime scene, Shawnee Township police officers were already there and told Deputy Cress that they found a deceased body in a bedroom.

{¶ 39} On cross-examination Deputy Cress admitted that Ream was very cooperative throughout the booking process. Deputy Cress also stated that the officers kept a close eye on Ream because they were unsure of his mental health.

{¶ 40} Sergeant Gregory Crites of the Allen County Sheriff's Office then testified as to his role in the investigation. Sergeant Crites testified that he was on duty on October 18, 2011. Around noon that day, Sergeant Crites met with Deputy Cress and Ream in the holding area. According to Sergeant Crites, Ream admitted to killing his brother, Ron. Sergeant Crites then asked Ream how he had killed his brother, and Ream replied that he had shot him. Sergeant Crites then testified that Ream told him that he shot his brother because "[Ream] had a number of good jobs and [Ream] lost them because [he] was taking care of [his] brother [Ron] because he has—has cancer." Trial Tr., p. 381, Sergeant Crites further indicated that Ream said that "[he] just can't take it anymore." Id. at p. 383.

{¶ 41} Sergeant Fred Depalma of the Allen County Sheriff's Office was the next witness to testify. Sergeant Depalma was called to respond to 1240 Fairgreen and assisted with the scene's processing. Sergeant Depalma took various pictures of the crime scene, which were subsequently offered into evidence. After taking pictures of the crime scene, Sergeant Depalma testified that he examined a recliner chair, which had blood spatters on it but found no bullet holes in the recliner. He then went to the bedroom where Ron's body was located. Sergeant Depalma testified that there were smear patterns on the floor from where the deceased body was dragged to the bedroom. He then testified that he found the body, faced down, with a multicolored blanket over him and a kitchen knife on top of the blanket. Further, Sergeant Depalma stated that he found Ron with cloth material tied around his wrist, and a rope tied around the cloth material.

{¶ 42} Sergeant Depalma then testified that he collected a total of five shell casings from inside 1240 Fairgreen. Once the coroner arrived on scene, Ron's body was examined further. Sergeant Depalma noticed a bullet hole in Ron's chest and a remote control underneath his body that appeared to have been dragged with the body.

{¶ 43} Ashley Magrum, Ron's next door neighbor, was the next witness to testify. Magrum testified that around 9:20 p.m., on October 17, 2011, she was outside her house smoking a cigarette. At that time she heard loud, multiple "bangs." Trial Tr.,

p. 478. Magrum testified that these loud bangs were not in sequence, rather they were in groups. According to Magrum, she heard at least five bangs coming from 1240 Fairgreen. Magrum thought that somebody was working on their house, and at first, did not believe they were gun shots.

{¶ 44} On cross-examination, Magrum testified that it all happened very quickly, and from hearing the first sound to the last sound was about two minutes. She testified that 60 to 90 seconds elapsed from hearing the first group of shots to the second group of shots. Further, Magrum testified that she does not know for sure whether the noises were gunshots, but assumed that they were.

{¶ 45} Next to testify was Todd Wharton, a forensic scientist for the Bureau of Criminal Identification and Investigation ("BCI"). Wharton testified that the gun, which Ream handed over to police, was a .45 caliber Smith and Wesson pistol and was semiautomatic. He explained that when one pulls the trigger of a semiautomatic pistol it will only fire one bullet. Wharton testified that he tested Ream's gun for two purposes: (1) to test the casings and bullets found at the crime scene; and (2) to determine whether Ream's gun was in proper working condition. Wharton testified that Ream's gun worked properly and that the casings and recovered bullets matched his test casings and bullets from Ream's .45 Smith and Wesson pistol.

{¶ 46} Wharton also testified that he tested casing and bullet fragments that police officers recovered from a fire ring at 1240 Fairgreen. These bullets and casings were damaged after being placed in a fire. Wharton testified that he compared the tested bullets and casings to the damaged bullets and casings discovered in the fire ring and found that there were some matching individual barrel engraved striations, but not enough for a positive identification. Wharton elaborated on how the bullets and casings were damaged. Wharton stated that some of the bullets were missing its core so only the jacket was intact. Further, the jacket was a darker color which is consistent with the bullet being placed in a fire.

{¶ 47} The next witness to testify was Daniel Davison, another forensic scientist for BCI, who works in the Trace Evidence Section. Davison explained that trace evidence includes, among other things, fiber analysis. When dealing with fiber analysis, Davison testified that he usually compares a fiber whose origin is unknown to a known fiber to determine whether they match. Davison was given several pieces of wood from the floor of 1240 Fairgreen with unknown fibers attached to it. Davison was also given the shirt Ron was wearing the night of the shooting, to compare the fibers found in the wood. Davison was able to conclude that the synthetic fibers found in the wood, were consistent with the fibers found in

the shirt. Further, Davison testified that what he found was consistent with a bullet going through the collar of the shirt and depositing the fiber in the hole of the wood.

{¶ 48} Detective Baker was the next witness to testify. Detective Baker testified that Ream never stated he sustained injuries on October 17, 2011. Further Detective Baker testified that he read Ream his Miranda rights, and Ream chose to waive those rights. Detective Baker played Ream's two police interviews for the jury. The two police interviews produced the following relevant evidence.

{¶ 49} Throughout the two interviews, Ream criticized Ron, calling him lazy, an ex-con, Dr. Jekyll and Mr. Hyde, and gross. Ream also described Ron as having a violent temper and always picking fights with Ream.

{¶ 50} Ream described what happened on October 17, 2011. According to Ream, he had an argument with Ron and Ron decided to kick Ream out of 1240 Fairgreen. As Ream was leaving with a pile of his clothes and his gun case, Ron lunged at Ream with a kitchen knife. Ream stated that after Ron lunged at him, he pulled out the gun from the gun case and shot Ron. Ream mentioned on several occasions that he feared for his life and believed Ron was going to stab him. Throughout the two interviews, Ron mentioned how he "blanked out" and could not remember all of the details surrounding the shooting. Ream then told Detective Baker that he cleaned up the blood on the floor so that the police would not track around blood when they arrived at 1240 Fairgreen. Further, Ream stated that after he shot Ron, Ron started to make gurgling noises so he decided to drag Ron to the bedroom.

{¶ 51} Ream mentioned that he went to McDonalds around 5 or 6 a.m. on October 18, 2011. Ream contacted his son and daughter that morning, giving them some of his possessions. When asked why Ream did not call 911 immediately after the shooting, Ream replied that he was in shock and assumed the neighbors had already called 911. Ream also told Detective Baker that he has suffered from mental problems and had been admitted to a psychiatric hospital twice before the shooting. Ream never mentioned going to BP the night of October 17, 2011.

{¶ 52} The next witness to testify for the State was Angie Jenkins, Ron's daughter. Jenkins testified that Ron and Ream had a troubled relationship. Ron financially supported Ream and his gambling habits. Jenkins also testified that the week Ream shot Ron, Ron had given Ream a $500.00 loan. Jenkins further testified that after Ron had his prostate surgery, it was mainly her and her brother who took care of Ron.

{¶ 53} Dr. Diane Scala–Barnett, a deputy coroner at the Lucas County Corners' Office, then testified to the wounds Ron received on October 17, 2011. She described seven gunshot wounds in the order in which she examined them, but did not suggest that the wounds occurred in the order she described. She indicated that the first gunshot wound was to the left side of the neck. Dr. Scala–Barnett further testified that there was a downward trajectory for this wound, which would be consistent with the shooter standing and the victim sitting in a chair. The second gunshot wound was to Ron's left chest. The third gunshot wound was to Ron's left flank, while the fourth gunshot wound was to Ron's upper right arm. Dr. Scala–Barnett testified that the fourth gunshot wound was consistent with the victim on the ground and the shooter standing over the body. The fifth gunshot wound was also to the left flank. The sixth gunshot wound entered Ron's back. Dr. Scala–Barnett explained that this gunshot wound was made while the shooter was higher than the victim. Finally, the seventh gunshot wound grazed Ron's neck.

{¶ 54} Dr. Scala–Barnett testified that of the seven gunshot wounds, only six were perforating wounds. Of the six perforating wounds, four bullets went through and through, and two bullets were recovered in the body at the autopsy. Further, Dr. Scala–Barnett testified that none of these wounds were a result from close range firing. Therefore, the shooter had to have been, at a minimum, a foot and a half to two feet away from Ron. Dr. Scala–Barnett testified that the Ron's cause of death was multiple gunshot wounds.

{¶ 55} On cross examination, Dr. Scala–Barnett testified she did a toxicology report on Ron and it revealed that he had therapeutic levels of cold medicine in his system.

{¶ 56} After Dr. Scala–Barnett's testimony, the trial court received all of the State's exhibits into evidence. The State then rested. Ream moved for an acquittal pursuant to Crim.R. 29, but the trial court denied the motion.

{¶ 57} Ream offered the knife found on Ron's body into evidence as Exhibit A. Thereafter, the defense rested and Ream renewed his Crim.R. 29 motion for acquittal, which the trial court again denied.

*State v. Ream*, No. 1-12-39, 2013 WL 5447606, at *10-14 (Ohio Ct. App. Sept. 30, 2013)

(footnotes omitted).

## II.    Procedural Background

### A.    State conviction

In November 2011, an Allen County Grand Jury indicted Ream for one count of murder with a firearm specification.  Doc. 11-1, pp. 4-5.  Ream entered a plea of not guilty to both charges.  Doc. 11-1, p. 5.

In December 2011, Ream moved for leave to enter a plea of not guilty by reason of insanity.  Doc. 11-1, pp. 6-9.  He also filed a motion requesting a competency evaluation.  Doc. 11-1, pp. 10-11.  The trial court granted both motions.  Doc. 11-1, pp. 12-14.

In February 2012, Ream moved to suppress all statements he had made to the police on the ground that the police never notified him of, or he never voluntarily waived, his rights to counsel and to remain silent.  Doc. 11-1, pp. 15-19.  The State opposed Ream's motion.  Doc. 11-1, pp. 26-108.  The trial court conducted a hearing on the motion in March 2012, and denied it.  Doc. 11-1, pp. 109-18.  *See also Ream*, 2013 WL 5447606, at *1-5.

In March 2012, Ream moved for public funds to hire a forensic psychologist to evaluate his competency and sanity, and to assist with a mitigation hearing if necessary.  Doc. 11-1, pp. 119-29.  The court granted the motion, although it provided less funding than Ream requested.  Doc. 11-1, p. 130.  Ream hired Dr. Matthew Zaccardi to serve as his expert.  Doc. 11-1, p. 132.  The trial court held a hearing on July 9, 2012, regarding Zaccardi's determination about Ream's competency and sanity, at which Ream withdrew his motion to determine competency and sanity.  Doc. 11-1, pp. 132-33.

Also on July 9, 2012, the State filed a motion *in limine* to exclude Zaccardi from testifying at trial, or, in the alternative, to vacate the trial date.  Doc. 11-1, pp. 134-39.  The court

conducted a hearing on the matter, and on August 7, 2012, it granted the State's motion, finding Zaccardi's testimony was neither relevant nor reliable.  Doc. 11-1, pp. 143-51; *see also Ream*, 2013 WL 5447606, at *5-7.

On August 7, 2012, the trial court also denied Ream's oral request for new counsel.  Doc. 11-1, pp. 152-54; *see also Ream*, 2013 WL 5447606, at *8-9.

On August 9, 2012, Ream filed a motion *in limine* to exclude certain photographs as they were irrelevant and prejudicial.  Doc. 11-1, pp. 155-57.  The trial court held a hearing on the motion on August 13, 2012, after jury selection, but before the trial began, and denied the motion.  *See Ream*, 2013 WL 5447606, at *9-10.

Ream's jury trial commenced on August 13, 2012.  *See* Doc. 11-1, p. 198.  On August 15, 2012, the jury found Ream guilty of murder and the firearm specification.  Doc. 11-1, p. 199.  On that same day, the trial court sentenced Ream to fifteen years' to life imprisonment for murder and three years' imprisonment for the firearms specification, to be served consecutively, for a total of eighteen years' to life imprisonment.  Doc. 11-1, pp. 200-01.

**B.     Direct appeal**

Through new counsel, Ream appealed to the Third District Court of Appeals.  Doc. 11-1, p. 202.  He raised the following assignments of error:

1.    The trial court erred in failing to suppress statements made during police interviews, as the [d]efendant had invoked his Fifth Amendment right to counsel.

2.    The trial court erred in disallowing the testimony of the defense's expert witness.

3.    The trial court erred in not giving jury instructions requested by the defendant.

4.    The trial court erred in not granting the defendant's motion for new counsel.

10

5.    The defendant was denied effective assistance of counsel.

6.    The trial court erred in permitting the introduction of gruesome photographs.

Doc. 11-1, p. 211.  The State filed its appellate brief on May 16, 2013. Doc. 11-1, pp. 238-92.

On September 30, 2013, the Third District Court of Appeals affirmed the judgment of the trial court.  Doc. 11-1, pp. 292-53; *Ream*, 2013 WL 5447606.

On November 14, 2013, Ream, again through new counsel, filed a timely notice of appeal in the Ohio Supreme Court.  Doc. 11-1, pp. 354-56.  In his memorandum in support of jurisdiction, he set forth the following sole proposition of law:

When the evidence at trial warrants instructions on both lesser-included offenses and self[-]defense, a criminal defendant is entitled to both.

Doc. 11-1, p. 358.  The court declined jurisdiction of the appeal on March 12, 2014.  Doc. 11-1, p. 430.

**C.      Federal habeas corpus**

On February 17, 2015, Ream, acting *pro se*, filed his federal habeas petition.  Doc. 1.  In his Petition, he asserts the following thirteen grounds for relief:[2]

**Ground One**: Ineffective Assistance of Trial Counsel[.]  Constitutional Amendments 5, 6, 8, 14[.]

**Supporting Facts**: Due to the plain error involving a [c]onflict of [i]nterest, Petitioner Ream was denied effective assistance of trial counsel as guaranteed by the United States Constitution and the Ohio Constitution, Article [O]ne[,] [S]ection 10; in that due to Public Defender, [t]rial [c]ounsels [*sic*] cumulative failures to adequately advocate the Petitioners [*sic*] defense and further failure to present such skill and knowledge as would render confidence in the trial and verdict, did allow [m]anifest [c]onst[itutional] error of ([n]o [i]ndictment until 11/17/2011) Due Process Clause[.]

---

[2] As discussed below, three additional grounds were added through a supplemental filing for a total of sixteen grounds for relief.  *See* Doc. 4; Doc. 9.

**Ground Two**: Petitioners [*sic*] [d]ue [p]rocess [r]ights to a fair and impartial trial were violated by the cumulative trial court errors[.]

**Supporting Facts**: Petitioner was denied a fair trial as guaranteed by the U.S. Constitution's Due Process Clause due to the [t]rial [c]ourts [*sic*] cumulative errors including denial of expert psychiatric witness testimony, and placebo incorrect instructions to the jury, evidence gained through coercion as well as prosecution misconduct. U.S. and Ohio Constitution[s] 6 and 14, 8 and 5[.]

**Ground Three**: Trial [c]ourt was in error not suppressing statements made by Petitioner during [p]olice interrogation even though in a state of mental imbalance Petitioner invoked his 5th Amendment right to counsel[.]

**Supporting Facts**: Petitioner Ream's 5th, 6th, 8th, and 14th [c]onstitutional rights, U.S. and Ohio, were violated by unfair police investigation and interrogation involving coercion in the use of cruel and unusual means to [an] uncharged citizen. Police provided the [c]ourt with improper interpretation of statements, records to court that gave improper elements to [j]ury instruction.

**Ground Four:** Trial [c]ourt erred in not giving [j]ury [i]nstructions as requested by the Petitioner through [c]ounsel[.] 6[th,], 14th, 5th U.S. Const[itution] Amend[ments.]

**Supporting Facts:** Trial [c]ourt created a [c]onstitutional error when it abused it's [*sic*] discretion and authority by prejudicial interpretation of fully explained plea of self-defense in that it intentionally interferred [*sic*] with instruction containing an [a]ffirmative complete defense. Trial [c]ourt did not submit or allow [e]xpert testimony or give description of essential elements of malice, duress, intent, instantaneous deliberation by instinctive reaction, Castle Law Doctrine that included "no duty to retreat" or what is a complete defense.

**Ground Five**: Trial [c]ourt violated Petitioner Ream's [d]ue [p]rocess right to [e]xpert [w]itness involving [p]sychological assistance in the trial and the sentencing phases of the proceedings by trial courts [*sic*] attachment of finality of the [e]xperts [*sic*] testimony and supplemental instruction to the [j]ury thereby omitting crucial elements necessary for a complete defense. 14th Amendment U.S. Constitution (motion in limine)[.][3]

---

[3] Ream did not provide supporting facts in his Petition's statement of Grounds for Relief Five through Sixteen.

**Ground Six**: Petitioner was denied effective assistance of [f]irst [a]ppellate [c]ounsel to the Third District Court due to counsel's lack of probe, research, and interpretation of available evidence by failing to cite to record the Constitutional value of the Petitioners *[sic]* rights and advocating the errors of those violations of the Petitioners *[sic]* [c]onstitutional rights in a[n] adequate legal manner. 6th and 14th Amendments U.S. Constitution[.]

**Ground Seven:** Petitioner was denied effective assistance of [s]econd [a]ppellate [c]ounsel to the Ohio Supreme Court. Counsel did not advocate the Petitioners *[sic]* case by meaningful representation in omitting the petitioners *[sic]* listed assignment of trial court errors from the Third District Court of Appeals, Allen County[,] Ohio. Instead[,] counsel brought forth a frivolous incorrect version of error that involved incorrect [j]ury [i]nstruction. In that a trial courts *[sic]* discretion of whether a lesser[-]included offense should be brought before the [j]ury is to be based upon a complete defense, counsel failed to show that in CR 2011 0411 there was no complete defense brought forward. Counsel used duplicity in falsely representing Ream to the Ohio Supreme Court. 6th and 14th Amendments U.S. Constitution[.]

**Ground Eight**: State failed to introduce sufficient evidence on the element of [p]rior [c]alculation and [d]esign[.] 14th Amend[ment] U.S. Constitution[.]

**Ground Nine**: Jury's finding of [p]rior [c]alculation and [d]esign was not supported by the [m]anifest [w]eight of the available evidence[.] 14th Amend[ment] U.S. Constitution[.]

**Ground Ten**: Trial [c]ourt allowed evidence of one party, the [p]rosecution[,] in regard to the admissability *[sic]* of the Petitioners *[sic]* statements from the Miranda *[sic]* interrogation, which [p]rosecution manipulated in error as to content and meaning, but did not allow essentially the same testimony to be allowed in the experts *[sic]* report to the court and the [j]ury. Trial [c]ourt, in no small error, deemed Ream's account as "Self Reporting" and not relevant or reliable while using the diminished mental state of the Petitioner during the interrogation to be brought forward in trial. Trial [c]ourt was in plain error in not allowing the [e]xperts *[sic]* report or restricting the Miranda *[sic]* statements. Constitutional Amend[ments] 5, 6, and 14[.]

**Ground Eleven**: Trial [c]ourt and [t]rial [c]ounsel allowed [p]rosecution misconduct of unsubstantiated use of false "BAD CHARACTER" reference, inferred intent without motive, and flawed theory based on testimony involving

unprovable human trait submitted by hearsay and the absense [*sic*] of real time witness testimony of the event. Constitutional Amendment 6 and 14[.]

**Ground Twelve**: Trial [c]ourt allowed prejudicial bloody photographs not of actual wounds from a firearm to be admitted to the [j]ury despite a [j]urist fainting during the viewing. Trial [c]ourt did not clear the [c]ourtroom which allowed a state of psychological duress to be born in the minds of the remaining [j]urist[s,] creating a "poisoned well" negating the [p]resumption of [i]nnocence and not allowing a fair and impartial trial. U.S. Constitution Amend[ment] 14[.]

**Ground Thirteen**: Prosecution did not prove every element of the charge of murder in that malice, the essential element to the charge of murder, is and was absent in this case and appeal proceedings. Constitutional Amendmenfi4, U.S. and Ohio[.]

Doc. 1, pp. 7, 8, 10, 11, 12.

On June 5, 2015, Ream sought leave to include an additional three grounds for relief

(Doc. 4), which the undersigned granted (Doc. 9).  They are:

**Ground Fourteen**: Petitioner states [c]onstitutional error to exclude alleged victims [*sic*] criminal and psychiatric record from jury and instructions. United States Constitution Amendments 6 and 14[.]

**Ground Fifteen:** Petitioner states that in view of available evidence not supplied to justify an affirmative defense of self[-]defense, [t]rial court ignored clear plain error in regard to omitted necessary words not contained in the original indictment specifying essential elements to the charge of murder in regard to the state of mind of Ream prior to and post the event allowing the exclusion of instructions to the jury of lesser-included offenses or actual acquittal defaulting the Due Process Clause of fair Jury instruction litigation resulting in prejudicial miscarriage of justice by misleading the jury in the causation element. Article 1 Section 10 of the State of Ohio Constitution and [t]he United States Constitution Amendments 6 and 14[.]

**Ground Sixteen**: Petitioner states [t]rial court did not allow expert evidence, adversarial or partisan, to prove the sanity of Ream and the state of mind involved with the action of the event to jury instructions thus not proving all elements necessary for conviction. United States Constitution Amendments 6 and 14[.]

Doc. 4, p. 1.[4]

On July 10, 2015, Ream filed a motion for appointment of counsel.  Doc. 8.  The undersigned denied the motion.  Doc. 13.

Respondent filed his Return of Writ on August 28, 2015.  Doc. 11.  Ream filed a Traverse (Doc. 18) on October 29, 2015, and a supplemental Traverse, with leave, on August 12, 2016 (Doc. 20; Doc. 21; Doc. 23).  Respondent did not respond to Ream's Traverse.

On November 10, 2016, Ream filed a "Motion to [I]nclude Default by the State of Ohio to [Record] [I]nvolving: [Ream v. Ohio] 92011-2016)."  Doc. 24.  On January 17, 2017, Ream sought leave to issue interrogatories upon Respondent.  Doc. 25.

Each of Ream's grounds for relief is addressed below.

### III.    Law and Analysis

**A.  Standard of review under AEDPA**

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 ("AEDPA"), apply to petitions filed after the effective date of the AEDPA.  *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).  In particular, the controlling AEDPA provision states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

---

[4] In this Report and Recommendation, the undersigned refers to the grounds for relief as Ream numbered and presented them in his Petition (Doc. 1) and supplement to his Petition (Doc. 4).  Ream renumbered his grounds and changed the headings of some grounds in his Traverse (Doc. 18).  The undersigned further notes that Ream repeats many of his claims under multiple grounds.  The claims will be addressed here, however, only under the ground that states the claim most clearly, unless otherwise indicated.

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  "A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'"  *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)).  "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'"  *Id*. at 599-600 (quoting *Williams*, 529 U.S. at 413).  "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous."  *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).  "The state court's application of clearly established law must be objectively unreasonable."  *Id.*

In order to obtain federal habeas corpus relief, a petitioner must establish that the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Bobby v. Dixon*, 132 S. Ct. 26, 27 (2011) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011).  This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal."  *Richter*, 131 S. Ct. at 786 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).  In short, "[a] state court's determination that a claim

lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id*. (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The petitioner carries the burden of proof.  *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

## B. Exhaustion and procedural default

Under the AEDPA, state prisoners must exhaust all possible state remedies, or have no remaining state remedies, before a federal court will review a petition for a writ of habeas corpus.  28 U.S.C. § 2254(b) and (c); *see also Rose v. Lundy*, 455 U.S. 509 (1982).  Accordingly, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  In other words, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  This exhaustion requirement, however, "refers only to remedies still available at the time of the federal petition." *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982).

Procedural default is a related but "distinct" concept from exhaustion, generally precluding federal habeas courts from considering the merits of claims procedurally barred in state courts.  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).  One way a petitioner may procedurally default a claim is "by failing to raise [the] claim in state court, and pursue [it] through the state's 'ordinary appellate review procedures.'"  *Id*. (quoting *O'Sullivan,* 526 U.S. at 848); *see also Baston v. Bagley*, 282 F. Supp. 2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition.").  "'If, at the time of the federal habeas petition, state law no longer allows the

petitioner to raise the claim, then the claim is procedurally defaulted.'" *Id.* (quoting *Engle*, 456 U.S. at 125 n.28). Under these circumstances, while the exhaustion requirement is technically satisfied because there are no longer any state-court remedies available to the petitioner, *see Coleman v. Thompson,* 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims fully considered in the state courts constitutes a procedural default of those claims, barring federal habeas review. *Williams,* 460 F.3d at 806 ("Where state court remedies are no longer available to a petitioner because he or she failed to use them within the required time period, procedural default and not exhaustion bars federal court review.").

A state prisoner also may procedurally default a claim by failing to "fairly present" it to state courts. To fairly present a claim to a state court, a petitioner must assert both the legal and factual basis for his or her claim. *Id.* (citing *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)). More specifically, a "'petitioner must present his claim to the state courts as a federal constitutional issue – not merely as an issue arising under state law.'" *Id.* (quoting *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)). Federal habeas courts review a petitioner's state-court briefs to determine whether he or she fairly presented a claim as a federal constitutional claim, examining the petitioner's: "'(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.'" *Id.* (citing *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)).

To overcome procedural default, a petitioner must show cause for the default and actual prejudice that resulted from the alleged violation of federal law, or that there will be a "fundamental miscarriage of justice" if the claim is not considered. *Coleman*, 501 U.S. at 750.

"'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot be fairly attributed to him." *Id.* "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id.* "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

## C.  All but one of Ream's grounds for relief are procedurally defaulted

Ream has procedurally defaulted all but one of the sixteen claims he asserts in his Petition, barring them from federal habeas review.   Indeed, of these sixteen grounds for relief, he raised only one – challenging the trial court's self-defense jury instruction – through the ordinary state appellate process to the Ohio Supreme Court.  And that claim, as will be discussed below, is not cognizable on federal habeas review.

### 1.  Ream procedurally defaulted Grounds One through Three, Five, Eight through Fourteen, and Sixteen by failing to fully present them to state courts

Respondent contends Ream procedurally defaulted his first through third, fifth, eighth through fourteenth, and sixteenth grounds for relief by failing to fully present them to state courts.  Doc. 11, pp. 21-25.  The undersigned agrees.  Ream "fail[ed] to raise [these] claim[s] in state court, and pursue [them] through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (quoting *O'Sullivan,* 526 U.S. at 845); *see also Baston*, 282 F. Supp. 2d at 661 ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition.").

Ream never raised in *any* state court the following claims:  all claims of ineffective assistance of trial counsel asserted in Grounds One, Five, Eleven, Twelve, Fourteen, and Sixteen,

except his claim relating to the presentation of witnesses[5]; Ground Two's cumulative-error claim; Ground Eight and Thirteen's claims of sufficiency of the evidence; Ground Nine's claim of manifest weight of the evidence; Ground Eleven's evidentiary claim regarding character evidence; and Ground Fourteen's evidentiary claim regarding the victim's background.  Ream raised the following claims in the state appellate court, but never appealed the court's denial of those claims to the Ohio Supreme Court:  ineffective-assistance claim relating to the presentation of witnesses in Ground One; *Miranda* claims in Grounds Three and Ten; claims relating to the admissibility of his mental health expert's testimony in Grounds Five, Ten, and Sixteen; and evidentiary claim regarding the photographs of the victim in Ground Twelve.

Moreover, Ream is no longer able to raise these claims in state court due to Ohio's filing deadlines, post-conviction procedures, and *res judicata* rules.  *See Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998) ("Under Ohio law, the failure to raise on appeal a claim that appears on the face of the record constitutes a procedural default under the State's doctrine of res judicata."); *State v. Perry*, 10 Ohio St. 2d 175, 180 (Ohio 1967) (Ohio's *res judicata* rule precludes a defendant from raising for the first time in post-conviction proceedings a claim that was fully litigated or could have been fully litigated at trial or on direct appeal.); Ohio R. Crim. P. 33(B) (defendant may be entitled to new trial after deadline for filing motion for new trial if he was "unavoidably prevented" from filing motion or there is "newly discovered evidence"); and Ohio

---

[5]  Ream's claims of ineffective assistance of trial counsel include allegations regarding his counsel's:  conflict of interest because his counsel's son "was under investigation and later indicted involving felony's [*sic*]" in Allen County (Doc. 18, p. 36); "cumulative failure to present, bolster, argue, investigate, and make timely objections to record by lack of probe, and applied professional knowledge" (Doc. 18, p. 36); refusal to permit Ream to testify (Doc. 18, p. 37); failure to request certain jury instructions (Doc. 18, pp. 40, 59); failure to object to certain jury instructions (Doc. 18, p. 40); failure to explain to the jury that "it isn't uncommon for a cadaver of any species to emit sounds such as produced by body gas and that prosecutions [*sic*] alluding that Ronald was still alive was horrible but groundless" (Doc. 18, p. 41); failure to object to, and challenge through cross-examination, "unprovable submitted evidence" (Doc. 18, p. 41); failure to prepare mental health expert (Doc. 18, p. 47); failure to investigate and challenge the police investigation (Doc. 18, p. 49); failure to hire a second mental health expert and renew the motion in limine using that expert (Doc. 18, p. 52); and failure to object to certain evidence (Doc. 18, pp. 64, 66).

Rev. Code § 2953.21(A)(1) (second, successive, or untimely post-conviction petition permitted if petitioner shows: (1) that he was "unavoidably prevented from discovery of the facts" of the claim, or the claim is based on a new federal or state right the Supreme Court has recognized that applies retroactively; and (2) but for constitutional error at trial, no reasonable factfinder would have found petitioner guilty of offense or eligible for death sentence). With no state-court remedies still available to him, Ream has defaulted those claims. *Williams,* 460 F.3d at 806.

Accordingly, Ream has procedurally defaulted his first through third, fifth, eighth through fourteenth, and sixteenth grounds for relief.

### 2. Ream procedurally defaulted Ground Four by failing to fairly present it to state courts

Respondent further argues that Ream procedurally defaulted Ground Four by failing to fairly present it to state courts. Doc. 11, pp. 25-26. In that ground for relief, Ream challenges the trial court's jury instruction on self-defense. Doc. 18, pp. 21-30. Specifically, he complains the trial court failed to "fully explain a plea of self-defense as a 'complete' defense," such as the "essential elements of malice, duress, intent, instantaneous deliberation by instinctive reaction, 'Castle Law Doctrine' (no duty to retreat) 'Even if Mistaken[.]'" Doc. 18, p. 21 (emphasis omitted). In the state appellate court on direct appeal, Ream argued that the trial court improperly omitted the words "even if mistaken" in its self-defense jury instruction. Doc. 11-1, pp. 220-21. He also argued that the trial court should have given his requested instructions on the lesser-included offense of manslaughter. Doc. 11-1, pp. 220-21. In Ream's memorandum in support of jurisdiction in the Ohio Supreme Court, he argued that the trial court should have instructed the jury on both self-defense and lesser-included offenses. Doc. 11-1, pp. 363-66. Respondent contends that Ream did not fairly present his self-defense jury instruction claim to the state courts because he both failed to raise "the same claim on the same theory" in the Ohio

courts as he does here (Doc. 11, p. 25), and "failed to exhaust" his claim regarding the "even if mistaken" language by not raising it in the Ohio Supreme Court (Doc. 11, pp. 25-26).

Determining when a claim has been "fairly presented" because of variations in legal theory or factual allegations "is contextual and individual to each case." *Houston v. Waller*, 420 Fed. Appx. 501, 509 (6th Cir. 2011).  "In some instances, simply presenting the facts, without also presenting 'the constitutional claim . . . inherent in those facts' is insufficient . . . .  In others, however, 'the ultimate question for disposition will be the same despite variations in the legal theory or factual allegations urged in its support.'"  *Id.* (quoting *Picard v. Connor*, 404 U.S. 270, 277 (1971) (internal quotations and citations omitted)).  Indeed, "[t]o present a claim fairly, it is sufficient if substance of the claim was presented to the state courts, such that the ultimate question would have been the same despite variations in the legal theory or factual allegations urged in its support." *Jells v. Mitchell*, 538 F.3d 478, 504 (6th Cir. 2008).  Although Ream articulates the legal basis of his claim here in more expansive terms than he did in state courts, it is at least arguable that he presented the substance, or the fundamental legal basis, of his self-defense jury-instruction claim to both the state appellate court and the Ohio Supreme Court.

Regardless, the undersigned agrees with Respondent that Ream did not fairly present his self-defense jury instruction claim to state courts because Ream never presented it to state courts as a federal constitutional issue.  In addressing this claim in his state-court briefs, Ream did not couch his legal arguments in constitutional terms, or otherwise employ language that might have indicated the assertion of federal constitutional claims.  His arguments relied almost exclusively on Ohio law; he made just one reference to the "fundamental" right to a "fair trial" with a citation to the federal constitution and another citation to a federal case with no accompanying argument.  Doc. 11-1, p. 363.  These references are too general to have fairly presented the

substance of a federal claim to the state courts.  "A petitioner need not cite 'chapter and verse' of constitutional law, . . . , but 'general allegations of the denial of rights to a 'fair trial' and 'due process' do not 'fairly present claims' that specific constitutional rights were violated.'" *Blackmon v. Booker*, 394 F.3d 399, 401 (6th Cir. 2004) (quoting *Franklin v. Rose*, 811 F.2d 322, 326 (6th Cir. 1987) and *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)) (holding petitioner did not fairly present his federal claim in state court).  *See also Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006) (finding claim of "denial of due process and a fair trial" in violation of "14th and 6th Amendments" without citation to federal constitutional cases insufficient for fair presentation).

Ream, therefore, did not fairly present Ground Four's self-defense jury-instruction claim to the state courts, and because he no longer is able to do so, the claim is procedurally defaulted. *See Perry*, 10 Ohio St. 2d at 180; *Williams,* 460 F.3d at 806.

Moreover, even if Ground Four was fairly presented to state courts, for the reasons set forth below with regard to Ground Fifteen, the claim is not cognizable on federal habeas review and the undersigned would recommend that it be dismissed on that basis.

### 3.  Ream procedurally defaulted Grounds Six and Seven by failing to raise them in a Rule 26(B) application to reopen his direct appeal

Respondent argues that Ream's Ground Six, alleging ineffective assistance of appellate counsel at the state court of appeals level, and Ground Seven, alleging ineffective assistance of appellate counsel at the Ohio Supreme Court, are unexhausted, because Ream did not raise the claims in his direct appeal or in an application to reopen his direct appeal pursuant to Ohio Appellate Rule 26(B) but still may do so through a delayed reopening application.  Doc. 11, pp. 14-16.  The undersigned, however, finds that Grounds Six and Seven are procedurally defaulted rather than unexhausted.

23

Rule 26(B) governs Ohio's "separate collateral opportunity" to raise appellate counsel ineffective-assistance claims.  *Goldberg v. Maloney*, 692 F.3d 534, 537 (6th Cir. 2012).  It requires that applications be made within ninety days from journalization of the appellate judgment absent a showing of good cause.  Ohio R. App. P. 26(B)(1).  Three years have passed, however, since the Ohio Supreme Court issued its final order in Ream's direct appeal (*see* Doc. 11-1, p. 430), and Ream offers no valid cause to support a delayed reopening application.  He faults his appellate counsel for failing to inform him about, or assist him with, filing the application.  Doc. 18, pp. 11, 12.  But the Ohio Supreme Court expressly has held that lack of assistance from counsel and ignorance of the law do not establish good cause to support a delayed reopening application, explaining:

> Twyford argues that he had good cause for missing the 90–day deadline set by the rule, claiming that he had a "constitutional right to appointed counsel to prepare and file" an application for reopening, and none was appointed for him in the court of appeals. Yet as we have explained, an App.R. 26(B) application for reopening is a "collateral postconviction remedy," and the state "has no constitutional obligation * * * to provide counsel to those defendants who file applications under that rule." . . . . We therefore reject Twyford's claim that his inability to secure further appellate representation in the court of appeals gave him good cause to miss the 90–day deadline in App.R. 26(B) after the court of appeals issued its second decision in September 1998.
>
> And Twyford himself cannot rely on his own alleged lack of legal training to excuse his failure to comply with the deadline. "Lack of effort or imagination, and ignorance of the law * * * do not automatically establish good cause for failure to seek timely relief" under App.R. 26(B).

*State v. Twyford*, 106 Ohio St. 3d 176, 177 (Ohio 2005) (internal citations omitted).  *See also State v. Reddick*, 72 Ohio St. 3d 88, 90 (Ohio 1995) (noting Rule 26(B) was not "intended as an open invitation for persons sentenced to long periods of incarceration to concoct new theories of ineffective assistance of appellate counsel in order to have a new round of appeals. Rather, [it

was] intended to allow the belated presentation of colorable claims that defendants/appellants were prevented from presenting timely by particular circumstances. Lack of effort or imagination, and ignorance of the law, are not such circumstances and do not automatically establish good cause for failure to seek timely relief."). [6]

Thus, Ream offers no good cause to support a delayed Rule 26(B) application and therefore has no remaining avenue of relief in state court to pursue his appellate counsel ineffective-assistance claims.  Accordingly, Grounds Six and Seven are procedurally defaulted.[7] *See Goldberg*, 692 F.3d at 538 (finding habeas petitioner procedurally defaulted appellate counsel ineffective-assistance claim by failing to file a Rule 26(B) application and offering no cause for failing to file a delayed application, even though he had raised the claim in a jurisdictional appeal to the Ohio Supreme Court); *Monzo v. Edwards*, 281F.3d 568, 577 (6th Cir. 2002) (holding that failure to establish good cause to excuse an untimely Rule 26(B) application is an adequate state procedural ground to bar federal habeas review); *Sowards v. Attorney General of Ohio*, No. 2:11CV954, 2012 WL 4051238, at *7 (S.D. Ohio Sept. 13, 2012) (finding that, while petitioner "fail[ed] to exhaust the state remedy of seeking to reopen his appeal, because any such attempt to file a Rule 26(B) motion at this point would be procedurally barred under Ohio law, he has procedurally defaulted his ineffective assistance of appellate counsel claim for purposes of habeas relief").

---

[6] As will be explained in greater detail below, ineffective assistance of appellate counsel also cannot constitute cause to excuse the procedural default of this claim for the same reason.

[7] Also, as discussed below, Ground Seven is not cognizable on federal habeas review.

**D.  Ream has not established cause and prejudice for the procedural defaults**

Ream advances several causes to overcome the procedural default of his habeas claims resulting from his failure to fully and fairly present them to state courts.

**1.  Ream's mental state**

First, Ream argues the default should be excused because he "was in a state of shock" and otherwise mentally ill while his direct appeal was pending and after.  He appears to argue that his compromised mental state prevented him from effectively conferring with or directing his attorney.  *See* Doc. 1, pp. 5, 14; Doc. 18, pp. 11, 13.  It is well-established, however, that "[c]ause for procedural default exists where something *external* to the petitioner, something that cannot fairly be attributed to him, . . . impeded his efforts to comply with the State's procedural rule."  *Maples v. Thomas*, 132 S. Ct. 912, 922 (2012) (emphasis original) (citations and internal quotations omitted); *Murray v. Carrier*, 447 U.S. 478, 488 (1986).  Thus, habeas courts have found petitioners' unsubstantiated and conclusory claims that mental illness prevented them from complying with state procedural rules insufficient to establish cause to excuse a procedural default.  *See, e.g., Harris v. McAdory*, 334 F.3d 665, 668-69 (7th Cir. 2003) (citing numerous "instructive" federal circuit court cases involving depression, borderline mental retardation, a diagnosis as a "borderline mental defective," and below-average intelligence, and holding that mental illness, which "comes from a source within the petitioner," may not constitute cause for procedural default because it fails "to qualify as an external impediment" to the defense within the meaning of *Murray*); *Sudberry v. Voorhies*, No. 1:03-cv-537, 2008 WL 1905262, at *9 (S.D. Ohio Apr. 29, 2008) (rejecting petitioner's "unsubstantiated and conclusory allegations" regarding his mental condition as cause for failing to file timely appeal to Ohio Supreme Court);

*Gibson v. Wolfe*, No. 2:04-cv-272, 2006 WL 1321023, at *l-2 (S.D. Ohio May 15, 2006)

(rejecting petitioner's assertion that his acute depression constituted cause for procedural defaults

of habeas claims).  As one circuit court has explained:

> [I]n order for mental illness to constitute cause and prejudice to excuse procedural
> default, there must be a conclusive showing that mental illness interfered with a
> petitioner's ability to appreciate his or her position and make rational decisions
> regarding his or her case at the time during which he or she should have pursued
> post-conviction relief.

*Holt v. Bowersox*, 191 F.3d 970, 974 (8th Cir. 1999).

Here, Ream appears to allege that he was in "a state of shock" or was otherwise mentally

ill or unstable and therefore unable to assist or direct his counsel.  But he does not cite to

anything in the record to support this allegation.  And, even if the undersigned were to consider

the report and opinion of Ream's mental health expert, Ziccardi, it would be insufficient to

establish cause for Ream's failure to preserve his federal constitutional claims in state court.  The

trial court, after conducting a hearing on Ziccardi's proposed testimony, found Ziccardi's opinion

unreliable (*see* Doc. 11-1, pp. 146-49), a ruling the state appellate court affirmed on direct

appeal, *see Ream*, 2013 WL 5447606, at *21-22.  The undersigned must defer to that factual

determination.  *See* 28 U.S.C. § 2243(e)(1).  Thus, Ream's mental state during his state court

appeals does not excuse his procedural default of his habeas claims.

### 2.  Ream's incarceration

Ream also argues that his default should be excused because he "was shipped to E. Ohio,

Nobel Correctional Inst., all communication to attorney(s) were by mail, no physical meetings to

verify representation or results – Transfered [*sic*] to Marion C. I. 2015 Now Pro-Se[.]"  Doc. 1,

p. 5; *see also* Doc. 18, pp. 13, 14.  He claims that being moved to different correctional

institutions deprived him of access to "meaningful legal assistance."  Doc. 18, p. 13.  However, a

federal habeas petitioner's *pro se* status, ignorance of the law and procedural filing requirements, and inability to conduct legal research due to prison rules and restrictions all have been held insufficient under *Maples* and *Murray* to establish cause to overcome procedural default. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004). The fact that Ream was transferred to various prisons, therefore, also does not excuse his claims' procedural default.

### 3. Ineffective assistance of counsel

Finally, Ream maintains that any procedural default of his claims was caused by the ineffective assistance of his appellate counsel, who "ignored" his "directions" about which claims to raise. Doc. 1, pp. 10, 14: *see also* Doc. 18, p. 9. He also asserts that appellate counsel failed to inform him about, or assist him with, the filing of a Rule 26(B) application to reopen his direct appeal, in which he could have raised claims that his appellate counsel was ineffective for failing to raise the claims he now asserts here. Doc. 18, pp. 11, 12.

"Attorney error that constitutes ineffective assistance of counsel is cause" to overcome procedural default. *Coleman v. Thompson*, 501 U.S. 722, 754 (1991). However, claims of ineffective assistance of counsel cannot provide cause for the procedural default of another claim if the ineffective-assistance claim itself is procedurally defaulted. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). Although "that procedural default may [] *itself* be excused if the prisoner can satisfy the cause-and-prejudice standard with respect to *that* claim." *Id*. (emphasis original).

As explained above, Ream never raised in state court either of his ineffective-assistance-of-appellate-counsel claims, and they are procedurally defaulted. Thus, Ream cannot use appellate counsel ineffective-assistance as cause to excuse the procedural default of his underlying claims unless he can establish cause and prejudice to excuse the default of his appellate counsel ineffective-assistance claims as well. Again, Ream faults his counsel. He

28

complains that his appellate counsel never informed him about, or assisted him with, the filing of a Rule 26(B) application to reopen his direct appeal, in which he could have raised his appellate counsel ineffective-assistance claims.  Doc. 18, p. 11, 12.  This argument fails.

The Sixth Circuit repeatedly has held that, because a Rule 26(B) proceeding is a separate collateral proceeding from the original appeal, petitioners have no constitutional right to assistance of counsel in such proceedings.  *See, e.g., Lopez v. Wilson*, 426 F.3d 339, 351 (6th Cir. 2005).  Thus, appellate counsel's conduct in connection with a Rule 26(B) application cannot establish ineffective assistance of counsel or, of relevance here, cause to overcome a procedural default.  *See, e.g., Carter v. Mitchell*, 693 F.3d 555, 565 (6th Cir. 2012) (appellate counsel's failure to appeal denial of Rule 26(B) application to Ohio Supreme Court not sufficient cause); *Scuba v. Brigano*, 527 F.3d 479, 489 (6th Cir. 2007) (appellate counsel's failure to file a timely Rule 26(B) application on petitioner's behalf not sufficient cause).  In fact, the Sixth Circuit specifically has applied this rule where appellate counsel failed to notify a petitioner of the Rule 26(B) deadline.  *Tolliver v. Sheets*, 594 F.3d 900, 929 (6th Cir. 2010) ("As Tolliver was not entitled to representation for his Rule 26(B) application, any poor advice he received from an attorney cannot establish cause for his default.").

Thus, Ream's appellate counsel's alleged failure to advise him concerning a Rule 26(B) application does not constitute cause to excuse the procedural default of his appellate counsel ineffective-assistance claims.  Since Ream's claim of ineffective assistance of appellate counsel is itself procedurally defaulted, it cannot provide cause for the procedural default of his other habeas claims.  *Edwards*, 529 U.S. at 453.  Also, as discussed below, the Sixth Amendment right to counsel does not extend beyond the first appeal as of right to a discretionary appeal and, therefore, Ream cannot demonstrate "cause" to excuse his procedural default of claims not

29

presented to the Supreme Court of Ohio based on alleged ineffective assistance of appellate counsel rendered in connection with his discretionary appeal to the Supreme Court of Ohio.  *See e.g., Garrett v. Moore*, 2007 WL 315093, * 5 (S.D. Ohio Jan. 30, 2007).

### 4.  Conclusion

For the reasons set forth herein Ream has not established cause to overcome the procedural default of Grounds One through Fourteen and Sixteen.  Moreover, because he has not established "cause," the undersigned need not consider the "prejudice" prong of the procedural default analysis.  *See, e.g., Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000).  Ream does not argue that he is actually innocent such that the default of these claims should be excused.

Accordingly, the undersigned recommends that the Court **DISMISS** Grounds One through Fourteen and Sixteen as procedurally defaulted.[8]

## E.  Ream's Grounds Seven and Fifteen are not cognizable on federal habeas review

### 1.  Ground Seven, alleging ineffective assistance of appellate counsel at the Ohio Supreme Court, is non-cognizable

In Ream's seventh ground for relief, he alleges ineffective assistance of appellate counsel at the Ohio Supreme Court.  Doc. 18, pp. 45-46.  Respondent argues this claim is unexhausted and/or not cognizable on federal habeas review.  Doc. 11, pp. 14-16, 20-21.

"There can be a constitutional claim of ineffective assistance of counsel only at a stage of the proceedings when there is a right to counsel under the Sixth Amendment."  *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 433 (6th Cir. 2006) (citing *Coleman v. Thompson*, 501

---

[8] Moreover, even if these claims were not procedurally defaulted, the undersigned would recommend that many of them should be dismissed as not cognizable on federal habeas review.  *See Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006) (cumulative error claims not cognizable on habeas); *Moreland v. Bradshaw*, 699 F.3d 908, 923 (6th Cir. 2012) ("alleged errors in evidentiary rulings by state courts are not cognizable in federal habeas review"); *Walker v. Engle*, 703 F.2d 959, 969 (6th Cir. 1983) (claims regarding the manifest weight of the evidence are based on state law and therefore non-cognizable on habeas).

U.S. 722, 752 (1991)).  And it is clear that "a defendant has no federal constitutional right to counsel when pursuing a discretionary appeal on direct review of his conviction . . . ." *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) (citing *Wainwright v. Torna*, 455 U.S. 586 (1982) and *Ross v. Moffitt*, 417 U.S. 600 (1974)); *see also Garrett*, 2007 WL 315093, * 5; *see also Espinal v. Warden, Noble Corr. Inst.*, 2007 WL 1288175, * 10 (S.D. Ohio May 1, 2007); *Sands v. Clipper*, 2015 WL 1538829, * 11 (N.D. Ohio Apr. 7, 2015) (when considering whether a petition was timely filed due to equitable tolling, the court considered a claim of ineffective assistance of appellate counsel and concluded that, "inasmuch as [petitioner] had no right to the assistance of counsel in his appeal to the Supreme Court of Ohio, there can be no claim that he was denied effective assistance of counsel in this regard.")

Accordingly, Ream's claim of ineffective assistance based on his counsel's performance on discretionary appeal to the Ohio Supreme Court is not cognizable on habeas corpus review.

## 2. Ground Fifteen, regarding lesser-included-offense jury instructions, also is non-cognizable

In his fifteenth ground for relief, Ream asserts that the trial court erred by failing to instruct the jury "on lesser included offenses or actual acquittal."  Doc. 18, p. 58.  Respondent argues this claim is not cognizable.  Doc. 11, pp. 27-29.  The undersigned agrees.

"It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241); s*ee also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."); *Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982) ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (citation omitted)).

Although the Supreme Court has held that it is a violation of due process for a court to fail to instruct on a lesser included offense supported by the evidence in a capital case, it has declined to decide whether the Due Process Clause would require the giving of lesser-included jury instructions in a noncapital case. *Beck v. Alabama*, 447 U.S. 625, 638 n.14 (1980).  The Sixth Circuit, however, has held that failure to instruct on a lesser-included offense in a noncapital case is not "such a fundamental defect as inherently results in a miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." *Bagby v. Sowders*, 894 F.2d 792, 797 (6th Cir. 1990).

Indeed, errors in jury instructions generally do not rise to the level of federal constitutional violations.  "[T]he circumstances that would induce a federal court to overturn the state court determination" regarding a requested jury instruction "would need to be extraordinary." *Id.* at 795. Federal habeas courts must determine "'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process', not merely whether 'the instruction is undesirable, erroneous, or even universally condemned.'" *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).

Ream raised his lesser-included-offenses jury instruction claim to the Ohio court of appeals and supreme court.  The state appellate court, the last state court to review the claim, reasoned:

> {¶ 106} In his third assignment of error, Ream asserts that the trial court erred by denying his request for jury instructions. Specifically, Ream argues that the trial court erred by refusing to give jury instructions on the lesser included offenses . . . . We disagree.

> *Standard of Review*

> {¶ 107} Jury instructions are within the sound discretion of the trial court and will not be disturbed on appeal unless an abuse of discretion is shown. *State v. Orians*, 179 Ohio App.3d 701, 2008–Ohio–6185, ¶ 10 (3d Dist.). Therefore, "when reviewing a trial court's jury instructions, the proper review for an appellate court

is whether the trial court's refusal to give a requested jury instruction constituted an abuse of discretion under the facts and circumstances of the case." *State v. Dailey*, 3d Dist. Hancock No. 5–99–56 (May 9, 2000); *see also State v. Wolons*, 44 Ohio St.3d 64, 68 (1989).

*Jury Instructions—Lesser Included Offenses*

{¶ 108} In regard to the trial court's failure to give the jury instructions concerning lesser included offenses, we find that Ream's argument lacks merit. Ream contends that the trial court should have included jury instructions for the lesser included offenses of voluntary manslaughter, reckless homicide, and negligent homicide. However, the trial court denied this request and instructed the jury on self-defense. Self-defense is a "'complete defense to all substantive elements of the crime charged' (or, consequently, to any lesser included offense)." *State v. Shadd*, 3d Dist. Marion No. 9–94–5 (Jun. 15, 1994) quoting *State v. Nolton*, 19 Ohio St.2d 133, 135 (1969). In *State v. Briggs*, 3d Dist. Allen No. 1–06–27, 2006–Ohio–5144, we found that a defendant who asserts self-defense "is not entitled under Ohio law to instructions on self-defense and lesser included offenses, but must choose between the two." (Internal quotations omitted.) *Id*. at ¶ 11.

{¶ 109} Ream argued numerous times that he acted in self-defense. During opening statements, Ream's trial counsel stated:

> What you're going to hear is an altercation between James and Ronald. You're going to hear a story that no matter what happened there was going to be one dead Ream. If James would not have done what he did he would be the one that would be deceased and Ronald would be the one sitting over there right now.
>
> You're going to hear what took place that evening, an altercation that the younger Ronald Ream went after James, his younger brother, with a knife and threatened him. It was not the first time he'd ever threatened him. Not the first time he threatened James or other individuals. It was not the first time he ever assaulted James or—he had a prior history of that.

Trial Tr., p. 297. Since Ream argued at trial that he acted in self-defense when he shot Ron, the trial court did not err in denying Ream's request for jury instructions for lesser included offenses.

*Ream*, 2013 WL 5447606, at *25-26.

In rejecting Ream's claim, the state court applied straightforward and well-settled Ohio law and reasonably interpreted facts adduced at trial. Ream has not pointed to any extraordinary circumstances to demonstrate that the omission of his proposed jury instructions "so infected the entire trial that the resulting conviction violates due process." *Cupp*, 414 U.S. at 147; *see also Bagby*, 894 F.2d at 795-97. Ream's jury-instruction claim asserted in Ground Fifteen, therefore, is not cognizable on federal habeas review.

Accordingly, the undersigned recommends that the Court **DISMISS** Grounds Seven and Fifteen as not cognizable on federal habeas review.

### IV. Conclusion and Recommendation

For the reasons stated herein, the undersigned recommends that the Court **DENY** Ream's "Motion to [I]nclude Default" (Doc. 24) and the undersigned recommends that the Court **DISMISS** Ream's Petition (Doc. 1) in its entirety because his claims are not cognizable on federal habeas review and/or are procedurally defaulted. Ream's request for interrogatories (Doc. 25) is **DENIED**.

Dated: April 12, 2017

Kathleen B. Burke
United States Magistrate Judge

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal

the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).