# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| JAMES RICHARD REAM, | ) | CASE NO. 3:15-cv-0313 |
| | ) | |
| PETITIONER, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | **MEMORANDUM OPINION** |
| | ) | |
| JASON BUNTING, Warden, | ) | |
| | ) | |
| RESPONDENT. | ) | |

Before the Court is the Report and Recommendation of Magistrate Judge Kathleen B. Burke (Doc. No. 28 ["R&R"]) recommending denial of this petition for writ of habeas corpus filed under 28 U.S.C. § 2254. *Pro se* petitioner James Richard Ream ("Ream") filed objections to the R&R. (Doc. No. 32 ["Obj."].) Pursuant to Fed. R. Civ. P. 72(b)(3), the Court has conducted its de novo review of the matters raised in the objections. For the reasons discussed below, the R&R is accepted and the petition is dismissed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On November 17, 2011, an Allen County, Ohio grand jury issued an indictment charging Ream with one count of murder (Ohio Rev. Code § 2903.02(A)), with a fire specification, for the murder of his brother, Ron. Ream entered a plea of not guilty. (Doc. No. 11 ["Answer"] Ex. 1.) Subsequently, Ream moved to plead not guilty by reason of insanity, and requested a competency evaluation (*id.* Exs. 2-4); both motions were granted by the trial court (*id.* Exs. 5-6).

Ream moved to suppress statements that he had made to law enforcement officers between October 18-20, 2011, arguing that there was no knowing, intelligent, or voluntary waiver of his

constitutional rights prior to any alleged statements, and that he had not been informed of his "*Miranda* rights." (*Id.* Ex. 7.) Following a hearing, the motion was denied. (*Id.* Ex. 10.)

Ream also moved the trial court for funds up to $5,000 to hire a forensic psychologist to evaluate his competency to stand trial and his mental state at the time of the offense. (*Id.* Ex. 11.) The trial court allowed $3,000 (*id.* Ex. 12), and Dr. Matthew Ziccardi was retained. After a hearing on July 9, 2012, based on Dr. Ziccardi's report, Ream withdrew his motion to determine competency and his not-guilty-by-reason-of-insanity plea. (*Id.* Ex. 13.)

The State then moved, with opposition from Ream, to exclude Dr. Ziccardi's testimony because his report failed to comply with Ohio Criminal Rule 16(k). (*Id.* Exs. 14-15.) Following a hearing, on August 7, 2012, the trial court granted the State's motion, finding that Dr. Ziccardi's testimony and methodology were unreliable, and would not be relevant with respect to any claim of self-defense. (*Id.* Ex. 16.) The trial court also denied Ream's oral motion to appoint new counsel. (*Id.* Ex. 17.)

Before trial, Ream sought to exclude certain photographs of the victim, which the trial court denied. (*Id.* Ex. 18; Doc. No. 12-1 ["Trial Tr. Vol. 1"] at 815, 822-24, 826.)[1] He also requested a jury instruction on self-defense, which was granted. (Answer Exs. 19-20.)

On August 15, 2012, a jury convicted Ream of murder with a firearm specification. (*Id.* Ex. 21.) He was sentenced to fifteen years to life imprisonment for the murder and three years for the firearm specification, to be served consecutively. (*Id.* Ex. 22.)

The R&R sets forth the entire factual background of the case, quoting extensively from the summary of the facts as set forth by the state appellate court on direct review. These factual

---

[1] All page number references are to the page identification number generated by the Court's electronic docketing system.

determinations are presumed correct, unless Ream rebuts them by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). As near as the Court can tell from the objections filed by Ream,[2] he is not challenging these underlying factual findings, which the Court repeats here for context.

{¶ 31} The trial of this matter commenced on August 12, 2012 and ended on August 15, 2012. The State's first witness was Rex Whetstone, Ron's former neighbor and good friend. On direct examination, Whetstone testified that Ron was recently retired and that before his retirement he had suffered from health problems. Specifically, Ron had been diagnosed with prostate cancer and had to have a surgery to remove his cancer. Despite having this surgery, Ron would still golf with Whetstone one to two times a week.

{¶ 32} Whetstone testified as to Ream's and Ron's relationship over the past six years. According to Whetstone, Ream lived with Ron, and Ream would occasionally mow the yard and do landscaping. But, Ream did not contribute to the household expenses and rarely was able to keep a job while living with Ron. Whetstone further testified that Ron owned two cars and let Ream drive one of them. Whetstone was also able to comment on Ream's spending habits and revealed that Ream spent much of his money on lottery tickets. Whetstone stated that in his six years of knowing the two brothers, he never saw them get in a physical confrontation.

{¶ 33} Whetstone then testified in regard to events he witnessed on October 17, 2011. Whetstone stated he was having relationship troubles with his significant other and decided to go to Ron's for the night. Around 10:00 p.m., Whetstone arrived at 1240 Fairgreen and noticed that all the lights were off, and the only light coming from the house was from the TV. Whetstone also observed that only Ron's car was in the driveway, and that the car Ream usually drove was not there.

{¶ 34} As Whetstone approached the door he saw Ron lying on the floor with a blanket on top of him. Whetstone testified that he knocked on the door, but Ron did not wake up. Whetstone did not think this was unusual as Ron was hard of hearing. Whetstone then proceeded to call both Ron's and Ream's cell phones, but got no answer. Then Whetstone walked to the back of 1240 Fairgreen, hoping the back door would be unlocked. However, the back door was also locked, and Whetstone tried knocking again. Around 10:30 that night, Whetstone decided to leave.

{¶ 35} On cross-examination, Whetstone testified that after Ron's prostate surgery, Ron experienced discomfort and some pain. Ron also could not complete many of the chores around the house. Ream helped Ron with these chores for the

---

[2] Ream's objections are difficult to interpret, not being a study in clarity and/or brevity.

time he was recovering from his surgery. Whetstone also testified that Ream always did the landscaping and yard work for Ron. Further, Whetstone admitted that Ron liked to drink beer and smoke marijuana on a daily basis.

{¶ 36} The State then called Megan Mays, an employee of a local gas station, to testify. Megan testified that Ream often came to the gas station to buy lottery tickets. According to Megan, she learned that Ream was accused of killing Ron the day after the shooting occurred. Megan thought this was strange, as Ream had come into the gas station the previous evening. Megan testified she left work about 10:10 p.m. on October 17, 2011 and saw Ream come into the station as she was leaving.

{¶ 37} Deputy Jerry Cress of the Allen County Sheriff's Office was the next witness to testify. Deputy Cress testified that he was on duty on October 18, 2011. Around noon, Deputy Cress was in the parking lot of the Sheriff's Office, placing some items in his police cruiser when Ream approached him. According to Deputy Cress, Ream asked him if he was on duty and if he had jurisdiction in Shawnee Township. When Deputy Cress replied that he did have jurisdiction, Ream told Deputy Cress to arrest him. Deputy Cress then asked Ream why he needed to be arrested, and Ream told Deputy Cress that "he had got[ten] into a situation that he couldn't get out of and he shot his brother." Trial Tr., p. 367.

{¶ 38} According to Deputy Cress, Ream's demeanor was calm but upset. Deputy Cress took Ream down to the booking area where he met with his supervisor and spoke with the Shawnee Township Police Department. Ream gave Deputy Cress his keys and gave him verbal permission to enter 1240 Fairgreen. When Deputy Cress arrived at the crime scene, Shawnee Township police officers were already there and told Deputy Cress that they found a deceased body in a bedroom.

{¶ 39} On cross-examination Deputy Cress admitted that Ream was very cooperative throughout the booking process. Deputy Cress also stated that the officers kept a close eye on Ream because they were unsure of his mental health.

{¶ 40} Sergeant Gregory Crites of the Allen County Sheriff's Office then testified as to his role in the investigation. Sergeant Crites testified that he was on duty on October 18, 2011. Around noon that day, Sergeant Crites met with Deputy Cress and Ream in the holding area. According to Sergeant Crites, Ream admitted to killing his brother, Ron. Sergeant Crites then asked Ream how he had killed his brother, and Ream replied that he had shot him. Sergeant Crites then testified that Ream told him that he shot his brother because "[Ream] had a number of good jobs and [Ream] lost them because [he] was taking care of [his] brother [Ron] because he has—has cancer." Trial Tr., p. 381, Sergeant Crites further indicated that Ream said that "[he] just can't take it anymore." *Id.* at p. 383.

4

{¶ 41} Sergeant Fred Depalma of the Allen County Sheriff's Office was the next witness to testify. Sergeant Depalma was called to respond to 1240 Fairgreen and assisted with the scene's processing. Sergeant Depalma took various pictures of the crime scene, which were subsequently offered into evidence. After taking pictures of the crime scene, Sergeant Depalma testified that he examined a recliner chair, which had blood spatters on it but found no bullet holes in the recliner. He then went to the bedroom where Ron's body was located. Sergeant Depalma testified that there were smear patterns on the floor from where the deceased body was dragged to the bedroom. He then testified that he found the body, faced down, with a multicolored blanket over him and a kitchen knife on top of the blanket. Further, Sergeant Depalma stated that he found Ron with cloth material tied around his wrist, and a rope tied around the cloth material.

{¶ 42} Sergeant Depalma then testified that he collected a total of five shell casings from inside 1240 Fairgreen. Once the coroner arrived on scene, Ron's body was examined further. Sergeant Depalma noticed a bullet hole in Ron's chest and a remote control underneath his body that appeared to have been dragged with the body.

{¶ 43} Ashley Magrum, Ron's next door neighbor, was the next witness to testify. Magrum testified that around 9:20 p.m., on October 17, 2011, she was outside her house smoking a cigarette. At that time she heard loud, multiple "bangs." Trial Tr., p. 478. Magrum testified that these loud bangs were not in sequence, rather they were in groups. According to Magrum, she heard at least five bangs coming from 1240 Fairgreen. Magrum thought that somebody was working on their house, and at first, did not believe they were gun shots.

{¶ 44} On cross-examination, Magrum testified that it all happened very quickly, and from hearing the first sound to the last sound was about two minutes. She testified that 60 to 90 seconds elapsed from hearing the first group of shots to the second group of shots. Further, Magrum testified that she does not know for sure whether the noises were gunshots, but assumed that they were.

{¶ 45} Next to testify was Todd Wharton, a forensic scientist for the Bureau of Criminal Identification and Investigation ("BCI"). Wharton testified that the gun, which Ream handed over to police, was a .45 caliber Smith and Wesson pistol and was semiautomatic. He explained that when one pulls the trigger of a semiautomatic pistol it will only fire one bullet. Wharton testified that he tested Ream's gun for two purposes: (1) to test the casings and bullets found at the crime scene; and (2) to determine whether Ream's gun was in proper working condition. Wharton testified that Ream's gun worked properly and that the casings and recovered bullets matched his test casings and bullets from Ream's .45 Smith and Wesson pistol.

{¶ 46} Wharton also testified that he tested casing and bullet fragments that police officers recovered from a fire ring at 1240 Fairgreen. These bullets and casings were damaged after being placed in a fire. Wharton testified that he compared the tested bullets and casings to the damaged bullets and casings discovered in the fire ring and found that there were some matching individual barrel engraved striations, but not enough for a positive identification. Wharton elaborated on how the bullets and casings were damaged. Wharton stated that some of the bullets were missing its core so only the jacket was intact. Further, the jacket was a darker color which is consistent with the bullet being placed in a fire.

{¶ 47} The next witness to testify was Daniel Davison, another forensic scientist for BCI, who works in the Trace Evidence Section. Davison explained that trace evidence includes, among other things, fiber analysis. When dealing with fiber analysis, Davison testified that he usually compares a fiber whose origin is unknown to a known fiber to determine whether they match. Davison was given several pieces of wood from the floor of 1240 Fairgreen with unknown fibers attached to it. Davison was also given the shirt Ron was wearing the night of the shooting, to compare the fibers found in the wood. Davison was able to conclude that the synthetic fibers found in the wood, were consistent with the fibers found in the shirt. Further, Davison testified that what he found was consistent with a bullet going through the collar of the shirt and depositing the fiber in the hole of the wood.

{¶ 48} Detective Baker was the next witness to testify. Detective Baker testified that Ream never stated he sustained injuries on October 17, 2011. Further Detective Baker testified that he read Ream his *Miranda* rights, and Ream chose to waive those rights. Detective Baker played Ream's two police interviews for the jury. The two police interviews produced the following relevant evidence.

{¶ 49} Throughout the two interviews, Ream criticized Ron, calling him lazy, an ex-con, Dr. Jekyll and Mr. Hyde, and gross. Ream also described Ron as having a violent temper and always picking fights with Ream.

{¶ 50} Ream described what happened on October 17, 2011. According to Ream, he had an argument with Ron and Ron decided to kick Ream out of 1240 Fairgreen. As Ream was leaving with a pile of his clothes and his gun case, Ron lunged at Ream with a kitchen knife. Ream stated that after Ron lunged at him, he pulled out the gun from the gun case and shot Ron. Ream mentioned on several occasions that he feared for his life and believed Ron was going to stab him. Throughout the two interviews, Ron [sic] mentioned how he "blanked out" and could not remember all of the details surrounding the shooting. Ream then told Detective Baker that he cleaned up the blood on the floor so that the police would not track around blood when they arrived at 1240 Fairgreen. Further, Ream stated that after he shot Ron, Ron started to make gurgling noises so he decided to drag Ron to the bedroom.

{¶ 51} Ream mentioned that he went to McDonalds around 5 or 6 a.m. on October 18, 2011. Ream contacted his son and daughter that morning, giving them some of his possessions. When asked why Ream did not call 911 immediately after the shooting, Ream replied that he was in shock and assumed the neighbors had already called 911. Ream also told Detective Baker that he has suffered from mental problems and had been admitted to a psychiatric hospital twice before the shooting. Ream never mentioned going to BP the night of October 17, 2011.

{¶ 52} The next witness to testify for the State was Angie Jenkins, Ron's daughter. Jenkins testified that Ron and Ream had a troubled relationship. Ron financially supported Ream and his gambling habits. Jenkins also testified that the week Ream shot Ron, Ron had given Ream a $500.00 loan. Jenkins further testified that after Ron had his prostate surgery, it was mainly her and her brother who took care of Ron.

{¶ 53} Dr. Diane Scala–Barnett, a deputy coroner at the Lucas County Corners' [sic] Office, then testified to the wounds Ron received on October 17, 2011. She described seven gunshot wounds in the order in which she examined them, but did not suggest that the wounds occurred in the order she described. She indicated that the first gunshot wound was to the left side of the neck. Dr. Scala–Barnett further testified that there was a downward trajectory for this wound, which would be consistent with the shooter standing and the victim sitting in a chair. The second gunshot wound was to Ron's left chest. The third gunshot wound was to Ron's left flank, while the fourth gunshot wound was to Ron's upper right arm. Dr. Scala–Barnett testified that the fourth gunshot wound was consistent with the victim on the ground and the shooter standing over the body. The fifth gunshot wound was also to the left flank. The sixth gunshot wound entered Ron's back. Dr. Scala–Barnett explained that this gunshot wound was made while the shooter was higher than the victim. Finally, the seventh gunshot wound grazed Ron's neck.

{¶ 54} Dr. Scala–Barnett testified that of the seven gunshot wounds, only six were perforating wounds. Of the six perforating wounds, four bullets went through and through, and two bullets were recovered in the body at the autopsy. Further, Dr. Scala–Barnett testified that none of these wounds were a result from close range firing. Therefore, the shooter had to have been, at a minimum, a foot and a half to two feet away from Ron. Dr. Scala–Barnett testified that the [sic] Ron's cause of death was multiple gunshot wounds.

{¶ 55} On cross examination, Dr. Scala–Barnett testified she did a toxicology report on Ron and it revealed that he had therapeutic levels of cold medicine in his system.

{¶ 56} After Dr. Scala–Barnett's testimony, the trial court received all of the State's exhibits into evidence. The State then rested. Ream moved for an acquittal pursuant to Crim.R. 29, but the trial court denied the motion.

{¶ 57} Ream offered the knife found on Ron's body into evidence as Exhibit A. Thereafter, the defense rested and Ream renewed his Crim.R. 29 motion for acquittal, which the trial court again denied.

(R&R at 1530-35, quoting *State v. Ream*, No. 1-12-39, 2013 WL 5447606, at *10-14 (Ohio Ct. App. Sept. 30, 2013) (footnotes omitted).)

On September 18, 2012, Ream filed his direct appeal, represented by new counsel. In his appellate brief, he asserted the following assignments of error:

> I. The trial court erred in failing to suppress statements made during police interviews, as the Defendant had invoked his Fifth Amendment right to counsel.
>
> II. The trial court erred in disallowing the testimony of the defense's expert witness.
>
> III. The trial court erred in not giving jury instructions requested by the defendant.
>
> IV. The trial court erred in not granting the defendant's motion for new counsel.
>
> V. The defendant was denied effective assistance of counsel.
>
> VI. The trial court erred in permitting the introduction of gruesome photographs.

(Answer Ex. 24 at 294.) On September 30, 2013, the court of appeals affirmed the judgment of the trial court. (*Id.* Exs. 26-27.)

On November 14, 2013, again represented by new counsel, Ream filed his notice of appeal to the Ohio Supreme Court. (*Id.* Ex. 28.) In his memorandum in support of jurisdiction, Ream raised one proposition of law:

> When the evidence at trial warrants instructions on both lesser-included offenses and self defense, a criminal defendant is entitled to both.

(*Id.* Ex. 29 at 441.) On March 12, 2014, the Ohio Supreme Court declined jurisdiction over the appeal. (*Id*. Ex. 30.)

On February 17, 2015, proceeding *pro se*, Ream filed the instant petition under 28 U.S.C. § 2254, which he later supplemented, with leave. (Doc. Nos. 1 and 4 (collectively, "Petition").) He raised the following grounds for relief:[3]

> **Ground One**: Ineffective Assistance of Trial Counsel[.] Constitutional Amendments 5, 6, 8, 14[.]
>
> **Ground Two**: Petitioners [sic] Due Process Rights to a fair and impartial trial were violated by the cumulative trial court errors[.]
>
> **Ground Three**: Trial Court was in error not suppressing statements made by Petitioner during Police interrogation even though in a state of mental imbalance Petitioner invoked his 5th Amendment right to counsel[.]
>
> **Ground Four:** Trial Court erred in not giving Jury Instructions as requested by the Petitioner through Counsel[.] 6th, 14th, 5th U.S. Const. Amend.
>
> **Ground Five**: Trial Court violated Petitioner Ream's Due Process right to Expert Witness involving Psychological Assistance in the trial and the sentencing phases of the proceedings by trial courts [sic] attachment of finality of the Experts [sic] testimony and supplemental instruction to the Jury thereby omitting crucial elements necessary for a complete defense. 14th Amendment U.S. Constitution (motion in limine)[.]
>
> **Ground Six**: Petitioner was denied effective assistance of First Appellate Counsel to the Third District Court due to counsel's lack of probe, research, and interpretation of available evidence by failing to cite to record the Constitutional value of the Petitioners [sic] rights and advocating the errors of those violations of the Petitioners [sic] Constitutional rights in a[n] adequate legal manner. 6th and 14th Amendments U.S. Constitution[.]
>
> **Ground Seven:** Petitioner was denied effective assistance of the Second Appellate Counsel to the Ohio Supreme Court. Counsel did not advocate the Petitioners [sic] case by meaningful representation in omitting the Petitioners [sic] listed assignment of trial court errors from the Third District Court of Appeals, Allen County[,] Ohio. Instead Counsel brought forth a frivolous incorrect version of error that involved incorrect Jury Instruction. In that a trial courts [sic] discretion of whether a lesser

---
[3] Only the first four grounds were supported by specific facts, which have been omitted here.

included offense should be brought before the Jury is to be based upon a complete defense, counsel failed to show that in CR 2011 0411 there was no complete defense brought forward. Counsel used duplicity in falsely representing Ream to the Ohio Supreme Court. 6th and 14th Amendments U.S. Constitution[.]

**Ground Eight**: State failed to introduce sufficient evidence on the element of Prior Calculation and Design[.] 14th Amend[ment] U.S. Constitution[.]

**Ground Nine**: Jury's finding of Prior Calculation and Design was not supported by the Manifest Weight of the available evidence[.] 14th Amend. U.S. Constitution[.]

**Ground Ten**: Trial Court allowed evidence of one party, the Prosecution[,] in regard to the admissability [sic] of the Petitioners [sic] statements from the Miranda interrogation, which Prosecution manipulated in error as to content and meaning, but did not allow essentially the same testimony to be allowed in the Experts [sic] report to the court and the Jury. Trial Court, in no small error, deemed Ream's account as "Self Reporting" and not relevant or reliable while using the diminished mental state of the Petitioner during the interrogation to be brought forward in trial. Trial Court was in plain error in not allowing the Experts [sic] report or restricting the Miranda statements. Constitutional Amend. 5, 6, and 14[.]

**Ground Eleven**: Trial Court and Trial Counsel allowed Prosecution misconduct of unsubstantiated use of false "BAD CHARACTER" reference, inferred intent without motive, and flawed theory based on testimony involving unprovable human trait submitted by hearsay and the absense [sic] of real time witness testimony of the event. Constitutional Amendment 6 and 14[.]

**Ground Twelve**: Trial Court allowed prejudicial bloody photographs not of actual wounds from a firearm to be admitted to the Jury despite a Jurist [sic] fainting during the viewing. Trial Court did not clear the Courtroom which allowed a state of psychological duress to be born in the minds of the remaining Jurist[s,] [sic] creating a "poisoned well" negating the Presumption of Innocence and not allowing a fair and impartial trial. U.S. Constitution Amend. 14[.]

**Ground Thirteen**: Prosecution did not prove every element of the charge of murder in that malice, the essential element to the charge of murder, is and was absent in this case and appeal proceedings. Constitutional Amendment 14, U.S. and Ohio[.]

**Ground Fourteen**: Petitioner states Constitutional error to exclude alleged victims [sic] criminal and psychiatric record from jury and instructions. United States Constitution Amendments 6 and 14[.]

**Ground Fifteen:** Petitioner states that in view of available evidence not supplied to justify an affirmative defense of self defense, Trial court ignored clear plain error in regard to omitted necessary words not contained in the original indictment specifying essential elements to the charge of murder in regard to the state of mind of Ream prior to and post the event allowing the exclusion of instructions to the jury of lesser-included offenses or actual acquittal defaulting the Due Process Clause of fair Jury instruction litigation resulting in prejudicial miscarriage of justice by misleading the jury in the causation element. Article 1 Section 10 of the State of Ohio Constitution and The United States Constitution Amendments 6 and 14[.]

**Ground Sixteen**: Petitioner states Trial court did not allow expert evidence, adversarial or partisan, to prove the sanity of Ream and the state of mind involved with the action of the event to jury instructions thus not proving all elements necessary for conviction. United States Constitution Amendments 6 and 14[.]

On April 12, 2017, Magistrate Judge Burke issued her R&R, recommending that the petition be denied because all of Ream's grounds, except for Ground Fifteen, are procedurally defaulted, and because Ground Fifteen is not cognizable in habeas corpus.

## II. DISCUSSION

**A.     Standard of Review**

Under 28 U.S.C. § 636(b)(1)(C), "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Powell v. United States*, 37 F.3d 1499 (Table), 1994 WL 532926, at *1 (6th Cir. Sept. 30, 1994) ("Any report and recommendation by a magistrate judge that is dispositive of a claim or defense of a party shall be subject to de novo review by the district court in light of specific objections filed by any party.") (citations omitted). "An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004); *see also* Fed. R. Civ. P. 72(b)(3) ("[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly

objected to"); LR 72.3(b) (any objecting party shall file "written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections."). After review, the district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

In conducting its de novo review in a habeas context, this Court must be mindful of the requirements of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), which provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-03, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment)).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially

12

indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).

B.  **Analysis and De Novo Review**

As a threshold matter, the Court notes that Ream refers to the R&R as "a long winded excuse by her honor [the magistrate judge] to intercede for the state attorney[.]" (Obj. at 1574.) Despite his *pro se* status, this is an inappropriate comment in a court document. Furthermore, Ream's own objections are 53 pages long and are nearly incomprehensible. Unfortunately, failure to present specific arguments can be fatal at this juncture, where objections must be specific in order to obtain de novo review and avoid waiver of appeal. *Kelly v. Withrow*, 25 F.3d 363, 365 (6th Cir. 1994) (the purpose of objections "is to provide the district court with the opportunity to consider the specific contentions of the parties and to correct any errors immediately[]" as well as "to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute[]") (internal quotation marks and citations omitted).

Ream's objections are anything but focused. Nonetheless, the Court has made every effort to ascertain the precise nature of his objections and has construed his objections liberally, given that Ream is proceeding *pro se*. *See Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972) ("hold[ing] [*pro se* pleadings] to less stringent standards than formal pleadings drafted by lawyers[]"); *but see Neitzke v. Williams*, 490 U.S. 319, 330 n.9, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989) ("the liberal pleading standard of *Haines* applies only to . . . factual allegations . . . . [not] legal theories[]"). The burden remains on Ream, not the Court, to make his case for his objections.

### 1. Procedural Default of Grounds One through Fourteen and Sixteen

The R&R properly notes that habeas courts are precluded "from considering the merits of claims procedurally barred in state courts[,]" (R&R at 1544, citing *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006)), unless the petitioner "show[s] cause for the default and actual prejudice that resulted from the alleged violation of federal law, or that there will be a fundamental miscarriage of justice if the claim is not considered." (*Id.* at 1545 (internal quotation marks omitted), citing *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S. Ct. 2546, 115 L. Ed. 640 (1991).)

A petitioner may procedurally default a claim in two ways: (1) "by failing to comply with state procedural rules in presenting his claim to the appropriate state court[;]" *Williams*, 460 F.3d at 806; and (2) "by failing to raise a claim in state court, and pursue that claim through the state's ordinary appellate review procedures." *Id.* (internal quotation marks and citation omitted). The latter type of default is often confused with exhaustion, which is a distinctly different concept. "Where state court remedies are no longer available to a petitioner because he . . . failed to use them within the required time period, procedural default and not exhaustion bars federal court review." *Id.* (citing *Engle v. Isaac*, 456 U.S. 107, 125 n.28, 102 S. Ct. 1558, 71 L. Ed. 2d 783 (1982)).

The R&R concludes that Ream procedurally defaulted fifteen of his sixteen grounds, as follows: (1) Grounds One through Three, Five, Eight through Fourteen, and Sixteen -- by failing to fully present them to the state courts (R&R at 1546-48 (complete failure to present the issues to the state courts, or failure to carry presented issues through the full appellate procedure)); (2) Ground Four -- by failing to fairly present it to the state courts (*id.* at 1548-50 (failure to present

his claim in state court as a federal constitutional issue)); and (3) Grounds Six and Seven[4] -- by failing to timely raise them in an Ohio Rule 26(B) application to reopen his direct appeal (*id.* at 1550-52 (lack of any basis for pursuing a delayed reopening application)).

The R&R further concludes that none of the reasons advanced by Ream to overcome his procedural default rise to the level of a legal "cause" for purposes of the cause and prejudice analysis under *Coleman*. (R&R at 1553-57.) As a result of there being no "cause," the "prejudice" prong was, properly, not considered by the R&R. (*Id.* at 1557.)

In his rambling objections, Ream occasionally makes passing mention of "procedural default" and "cause and prejudice" (*see, e.g.*, Obj. at 1575, 1577,[5] 1579, 1580, 1581, 1582, 1596), but he makes no specific argument explaining how the R&R's careful reasoning is in error. He merely argues that "[h]er honors [sic] procedural default judgments are erroneous and objectionable[,]" and that "her honor failed to adequately explain as to how, when, and why the claim of procedural default occurred." (*Id.* at 1577, 1580.)

In Ream's view, "the State court did not actually reach and determine issues of fact that were brought forward by Ream but instead relied upon preclusion methods to instead deny relief without actually reaching adjudication." (Obj. at 1619.) Ream offers no support from the record for this conclusory assertion. Nonetheless, he concludes that "[b]y deciding the merits of the case due to the imposed inadequacies that have left dispositive matters unresolved, [the] State can not [sic] claim procedural default but has induced futility to obtain any real remedy search available

---

[4] Ground Seven is also rejected by the R&R because it is not cognizable in habeas corpus. (*See* R&R at 1557-58.)

[5] On p. 1577, petitioner asserts that "her honor made no mention of petitioners [sic] showing of 'Cause and Prejudice' examples . . . ." (Obj. at 1577, citing Traverse pages 0-VIII [page ID # 1347-55.) Even if the Court were to credit an argument from the traverse as a "proper" objection to the R&R, which it does not, the cited pages from the traverse do little more than recite a jumble of legal principles, with accompanying conclusory statements about alleged mistakes during the state court proceedings.

in the Ohio lower court system[.]" (*Id.*, citing *Townsend v. Sain*, 372 U.S. 293, 83 S. Ct. 745, 9 L. Ed. 2d 770 (1963).) For whatever reason Ream may have cited *Townsend*, its "deliberate bypass" standard for excusing a habeas petitioner's failure to develop a material fact in state court has been overruled. *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 5-6, 112 S. Ct. 1715, 118 L. Ed. 2d 318 (1992) ("[T]his Court has rejected the deliberate bypass standard in state procedural default cases and has applied instead a standard of cause and prejudice.")[6]

The Court overrules any objections Ream has raised with respect to the R&R's conclusion that fifteen of his sixteen grounds for relief are procedurally defaulted, with no showing of cause and prejudice.

### 2. Claim not Cognizable in Federal Habeas (Ground Fifteen)[7]

Ground Fifteen challenges the trial court's failure to instruct the jury on "lesser included offenses[,]" in particular, manslaughter, claiming that this violated due process.[8] This ground is

---

[6] *Keeney* was a case involving a petitioner's request for an evidentiary hearing in a habeas action. It was decided four years before enactment of AEDPA and was superseded by that statute. *Williams*, 504 U.S. at 432-37 (explaining 28 U.S.C. § 2254(e)(2)).

[7] The R&R also specifically addresses Ground Seven as non-cognizable. (R&R at 1557-58.) However, since it is procedurally defaulted, the Court need not separately consider whether it is cognizable in habeas corpus. Additionally, in a footnote, the R&R declares some of the other procedurally defaulted grounds also non-cognizable. (*Id.* n.8, citing claims of cumulative error, alleged errors in evidentiary rulings, and claims regarding manifest weight of the evidence.) It is unclear why the R&R singles out the procedurally defaulted Ground Seven for discussion under cognizability, whereas it relegates other grounds merely to the footnote. The Court, however, sees no need to answer that question since all these other grounds are procedurally barred.

[8] In Ground Fifteen, Ream also mentions "self defense," but the gravamen of Ground Fifteen is a challenge to the failure to instruct on the lesser included offense. Self defense is more particularly addressed by Ream under Ground Four, which the R&R finds to be procedurally defaulted because it was not fairly presented to the state courts. (*See* R&R at 1548-50.) In the alternative, the R&R would also conclude that a challenge to the wording of a self-defense jury instruction under state law is not cognizable on federal habeas review. (*Id.* at 1550.) The Court agrees. Whereas the outright refusal to give a self-defense instruction might implicate "the due process right to present a complete defense[,]" *Horton v. Warden, Trumbull Corr. Inst.*, 498 F. App'x 515, 520 (6th Cir. 2012), here, Ream only challenges the trial court's phraseology with respect to the instruction (i.e., its refusal to include "even if mistaken"), a matter of state law interpretation that is not cognizable on habeas review.

not procedurally defaulted, having been fully and fairly presented to the state courts. The R&R concludes that it is barred for a different reason -- it is not cognizable in federal habeas corpus.

The Sixth Circuit has held that a failure to instruct on a lesser-included offense in a noncapital case is not "such a fundamental defect as inherently results in a miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure[.]" *Bagby v. Sowders*, 894 F.2d 792, 797 (6th Cir. 1990). Therefore, "it is not an error of such character and magnitude to be cognizable in federal habeas corpus review, [a view that] is shared by a majority of the circuits." *Id.* (citing cases). The court in *Bagby* did state that it was "conceivable" that such a claim might be cognizable where "a fundamental miscarriage of justice is found to have resulted from the arbitrary and unsupportable denial of a lesser included offense instruction in clear defiance of state law[.]" *Id.* at 795. But, "since it is not the function of a federal habeas court to correct errors in state law, [the court] would not be warranted in setting aside [a] conviction [on the basis of a faulty jury instruction] except under the most unusual circumstances." *Id.*

Here, as pointed out by the R&R, Ream presented this claim to the state courts and the last court to review it on the merits "applied straightforward and well-settled Ohio law and reasonably interpreted facts adduced at trial." (R&R at 1561.) Further, "Ream has not pointed to any extraordinary circumstances to demonstrate that the omission of his proposed jury instructions 'so infected the entire trial that the resulting conviction violates due process.'" (*Id.*, quoting *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S. Ct. 396, 38 L. Ed. 2d 368 (1973); citing *Bagby*, 894 F.2d at 795-97.)

As near as the Court can tell, Ream's objections completely fail to address the question of cognizability in habeas corpus, except to state that the R&R concluded that "Ream's reply was not

17

cognizable[.]" (Obj. at 1581.) The Court can locate no argument in the objections relating to lesser included offenses.

## III. CONCLUSION

For the reasons set forth herein, the R&R is accepted and this petition for habeas corpus is denied and dismissed. Further, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253; Fed. R. App. P. 22(b).

**IT IS SO ORDERED**.

Dated: February 28, 2018

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**